1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    MATTHEW V. VAUGHAN, et al.,              Case No.  25-cv-00479-DMR

8                    Plaintiffs,

9            v.                               **OMNIBUS ORDER ON MOTIONS TO
                                              DISMISS AND MOTION TO
10   FEDERAL NATIONAL MORTGAGE                RECONSIDER DISCOVERY ORDER**
     ASSOCIATION, et al.,
11                                            Re: Dkt. Nos. 44, 46, 49, 56, 66, 75
                    Defendants.
12

13          Plaintiffs Matthew V. Vaughan and Amy A. Vaughan, who are married, filed the operative

14   first amended complaint ("FAC") against Defendants Movement Mortgage, LLC ("Movement"),

15   Federal National Mortgage Association ("Fannie Mae"), Compass California II, Inc. ("Compass"),

16   and Old Republic National Title Insurance Company ("Old Republic") alleging that they were the

17   victims of an unlawful real estate transaction.  [Docket No. 41 (FAC).]  The four Defendants move

18   to dismiss all claims against them in their entirety.  [Docket Nos. 44 (Old Republic MTD); 46

19   (Fannie Mae MTD); 49 (Compass MTD); 56 (Movement MTD).]  Plaintiffs oppose.  [Docket

20   Nos. 50 (Old Republic Opp'n); 51 (Compass Opp'n); 52 (Fannie Mae Opp'n); 60 (Movement

21   Opp'n).]

22          The court held a hearing on the motions.  At the hearing, the court ordered that limited

23   discovery shall proceed.  [Docket No. 72 (Minute Order).]  Plaintiffs filed a motion for leave to

24   file a motion for reconsideration of the discovery order.  [Docket No. 75 (Recon. Mot.).]  For the

25   following reasons, Defendants' motions to dismiss are granted.  Plaintiffs' motion for leave to file

26   a motion for reconsideration of the discovery order is denied.

27

28

United States District Court
Northern District of California

# I.    BACKGROUND

## A.    Statement of Facts

Plaintiffs make the following allegations in the FAC, which the court takes as true for purposes of this motion.[1]  The case revolves around Plaintiffs' purchase of a unit in the "Trask Lofts," a condo project located at the corner of Trask Street and Kingsland Avenue in East Oakland.  FAC ¶ 17.  The Trask Lofts consists of a single building with five contiguous two-story loft-style units.  *Id.*  Plaintiffs' unit will be referred to as "Unit 5410."  *Id.* ¶ 16.

Compass listed Unit 5410 in December 2020 as "a new residential condo."  FAC ¶ 276. Between January 24, 2021 and January 26, 2021, Plaintiffs approached Compass agent Jason Mitchell and Movement mortgage broker J. Jay Simmons about potentially purchasing Unit 5410 with conventional financing.  *Id.* ¶ 28.  Compass provided "real estate sales services," and Movement provided "conventional mortgage origination services."  *Id.* ¶ 30.  Plaintiffs informed the Compass and Movement agents that they were looking for a residential unit they could purchase at an affordable price and ultimately sell so they could buy a new home.  *Id.* ¶¶ 27-28. Simmons assured Plaintiffs that Movement was "legally required to perform a full condominium project review and verify the legality and marketable value of the property through a qualified appraisal, among other things, consistent with Fannie Mae's underwriting standards."  *Id.* ¶ 58. Movement provided Plaintiffs with a pre-approval letter for conventional financing on January 27, 2021.  *Id.* ¶ 56.  Plaintiffs allege that Movement never conducted a full condo project review.  *Id.* ¶ 76.

On January 25, 2021, Plaintiffs requested information from Compass agent Mitchell about why the listing price for Unit 5410 had not decreased despite the property being on the market for 45 days.  *Id.* ¶ 288.  Mitchell responded that there had been a prior interested buyer who unexpectedly backed out of the sale, so the price only appeared to be stagnant.  *Id.* ¶ 289.  Mitchell did not disclose that the unit had previously been on the market for an additional 95 days.  *Id.* ¶ 290.

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

United States District Court
Northern District of California

Plaintiffs asked Mitchell multiple times whether the condo project was lawfully created. *Id.* ¶ 295. Mitchell responded that Unit 5410 "could not have been sold by the developer as a new residential condo unless the property was properly subdivided into residential condo parcels in connection with a city-authorized residential common interest development." *Id.* ¶ 296. Mitchell also represented that the condo was considered a new construction in 2019 and it could not have been sold unless "construction was complete and compliant with then-applicable building and development standards." *Id.* ¶ 298. Mitchell assured them that the construction "had to meet minimum building standards for it to be occupied." *Id.* ¶ 300. Mitchell also stated that Plaintiffs could trust the residential real estate appraisal and Movement's purchase loan approval to know with reasonable certainty that Unit 5410 had marketable value as a residential condo at $595,000. *Id.* ¶¶ 301-302.

Plaintiffs also inquired about the developer of Trask Lofts, Vincent Hayes, being the president or manager of the Trask Lofts HOA despite having sold all of the units. *Id.* ¶¶ 304-305. Mitchell represented that Hayes was a paid HOA manager who worked at the direction and for the benefit of the Trask Lofts owners. *Id.* ¶ 306. However, Plaintiffs allege that Hayes was not a legitimate property manager for Trask Lofts and that his ongoing involvement with the HOA was a "major conflict of interest against the interests of the Trask Lofts owners." *Id.* ¶¶ 309, 318.

Old Republic had prepared a preliminary title report and offer of title insurance dated December 1, 2020 for use in offering Unit 5410 for sale as a residential condo. *Id.* ¶ 398. On January 29, 2021, escrow was opened for Plaintiffs' purchase of Unit 5410. *Id.* ¶ 29. Old Republic provided all escrow and title-related services, including an updated title report and offer of title insurance, escrow services for Plaintiffs' purchase and financing of Unit 5410, a lender's policy of title insurance, a borrower's policy of title insurance, and a home warranty. *Id.* ¶ 401.

On February 16, 2021, Movement approved a $535,500.00 conventional mortgage at a 30-year fixed interest rate of 2.875% for Plaintiffs' purchase of Unit 5410 (the "Purchase Loan"). *Id.* ¶ 31. Plaintiffs executed the promissory note and Deed of Trust on February 23, 2021 for the Purchase Loan. *Id.* ¶ 32. On March 1, 2021, the property sale and Purchase Loan were recorded via grant deed, escrow closed on the purchase, and Plaintiffs took possession and occupancy of

Unit 5410 as their primary residence.  *Id.* ¶¶ 33-34.  Shortly after, Movement transferred the beneficial interest in the Purchase Loan to Fannie Mae and continued servicing the loan.  *Id.* ¶ 59.  Movement certified the loan's compliance with underwriting standards, verifying the eligibility of the project and property and that Movement had reviewed the appraisal report.  *Id.* ¶ 79.  According to Plaintiffs, after the transfer of the Purchase Loan, Fannie Mae then became the "'lender' in actuality or in effect at all times relevant to this case."  *Id.* ¶ 157.

A year later, between January 2022 and March 2022, Plaintiffs learned, "among other things, that construction of the Trask Lofts development was never completed, that the building permits under which construction was performed had expired, that no portion of the property was ever certified for occupancy, and that the property was never approved for subdivision into residential condos."  FAC ¶ 40.  On March 2, 2022, the Oakland Fire Prevention Bureau yellow-tagged the Trask Lofts property and entered a "fire watch" order, and Plaintiffs learned "the building did not have—and *never* had—state-mandated fire sprinklers, a fire alarm/alert system, or fire extinguishers and, thus, that our new home was not safe or legal to occupy for any purpose."  *Id.* ¶ 41.  Plaintiffs assert that the only way to resolve the marketability issues with the property was to complete the condo project, and Plaintiffs could not do so because the entire building was under-constructed and Plaintiffs could not act on behalf of the entire building.  *Id.* ¶¶ 429-430.

On March 2, 2022, Plaintiffs informed Movement that they were rescinding their purchase of the property due to the legal and physical defects.  *Id.* ¶ 60.  Between March and May 2022, Plaintiffs provided Movement with documentation and evidence showing the property's unlawful construction and subdivision.  *Id.* ¶¶ 62-63.  Movement responded that they had no obligation to reverse the loan or halt collection efforts, "claiming to act under Fannie Mae's direction."  *Id.* ¶ 65.  Movement continued to engage in collection efforts.  *Id.* ¶ 66.  Plaintiffs vacated Unit 5410 on March 17, 2022.  *Id.* ¶ 43.  Plaintiffs informed Fannie Mae of the issues with the loan on May 2, 2022.  *Id.* ¶¶ 180-182.  Between November 2022 and June 2023, Fannie Mae authorized a nonjudicial foreclosure and purchased the unit on June 15, 2023 at foreclosure auction for $504,000.  *Id.* ¶¶ 44, 158-160.  Plaintiffs allege that this harmed their credit and financial interests and violated Fannie Mae's public obligations by "perpetuating risk through the enforcement and

United States District Court
Northern District of California

1  foreclosure of illegitimate debt." *Id.* ¶ 186.  In total, Movement collected over $27,800 in

2  payments from Plaintiffs on behalf of Fannie Mae from April 2021 to April 2022.  *Id.* ¶ 82.

3        Old Republic opened a claim under Plaintiffs' title insurance policy on January 5, 2022.

4  *Id.* ¶ 428.  Old Republic agreed to pay $25,000, but this was contingent on Plaintiffs paying

5  $5,000 "to resolve the marketability issues," which Plaintiffs allege they had no legal ability to do.

6  *Id.* ¶ 430.

7        Plaintiffs allege that the sale of Unit 5410 as a residential unit was unlawful, and

8  Defendants knew or should have known this but failed to disclose any issues with the unit to

9  Plaintiffs before the purchase.  Specifically, Plaintiffs allege that Defendants should have reviewed

10  property records at the time of the transaction which showed:

11      • Parcel Map 9502, the only recorded map of the property, authorized five

12         commercial condominiums—not residential condominiums.  FAC ¶ 38.  Plaintiffs

13         allege that selling commercial units as residential condos violated the California

14         Subdivision Map Act (the "Map Act") and therefore the grant deed was "incapable

15         of conveying a valid property interest."  *Id.* ¶¶ 45-52.

16      • The county tax records lacked a unit number or unique address for Unit 5410,

17         "suggesting it was not certified for occupancy."  *Id.*

18      • There was no Certificate of Completion or other documentation establishing

19         construction or occupancy approval, "implying incomplete construction and

20         regulatory violations."  *Id.*

21      • Only three of five condo parcels had been released from the original development

22         loan's deed of trust, despite all units being sold, "suggesting unresolved

23         encumbrances on title."  *Id.*

24      • The developer remained listed as the Homeowner Association (HOA) "president"

25         and "manager," despite all units being sold, "indicating the HOA was not lawfully

26         formed or transferred to owners."  *Id.*

27  **B.**    **Procedural Background**

28  Plaintiffs filed this case on January 14, 2025.  They filed the FAC on May 5, 2025.

Plaintiffs bring the following claims:

- Against Movement

  1. Rescission

  2. Tortious breach of implied covenant of good faith and fair dealing

  3. Civil Conspiracy

  4. California Business and Professions Code § 17200, *et seq.* (UCL)

- Against Fannie Mae

  5. Rescission

  6. Tortious breach of implied covenant of good faith and fair dealing

  7. Civil Conspiracy

  8. UCL

- Against both Movement and Fannie Mae (collectively "Mortgage Defendants")

  9. Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA)

  10. Wrongful foreclosure, Cal. Civil Code § 2924

- Against Compass

  11. Constructive fraud

  12. Tortious breach of implied covenant of good faith and fair dealing

  13. Civil Conspiracy

  14. UCL

- Against Old Republic

  15. Constructive fraud

  16. Tortious breach of implied covenant of good faith and fair dealing

  17. Civil Conspiracy

  18. UCL

On June 12, 2023, Plaintiffs filed a lawsuit in this district involving some of the same parties. *Vaughan v. Wardhaugh*, Case No. 23-cv-02879-RFL.[2]  However, that case involved

_____

[2] In *Wardhaugh*, the Honorable Rita F. Lin dismissed Plaintiffs' civil RICO claims with prejudice and then dismissed the remaining state law claims without prejudice for lack of subject matter

1   different claims and was determined not to be related to this case.  [Docket No. 62 (Order Denying

2   Motion to Relate).]

3          The parties do not dispute that California law applies to this case.

4   **II.     LEGAL STANDARDS**

5          Pleadings by a self-represented litigant must be liberally construed and "held to less

6   stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94.  The

7   Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation "to construe

8   the pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman*, 773

9   F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  "This rule relieves pro se litigants from the strict

10  application of procedural rules and demands that courts not hold missing or inaccurate legal

11  terminology or muddled draftsmanship against them."  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241

12  (9th Cir. 2013).  However, "a liberal interpretation of a pro se . . . complaint may not supply

13  essential elements of the claim that were not initially pled."  *Byrd v. Maricopa Cty. Sheriff's

14  Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469,

15  471 (9th Cir. 1992)).

16         Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter

17  of course, at least until the defendant files a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  After

18  that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be

19  given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied

20  with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir.

21  2003) (quotation omitted).  However, leave to amend may be denied where the complaint "could

22  not be saved by any amendment," i.e., "where the amendment would be futile."  *Thinket Ink Info.

23  Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004).

24     **A.  FRCP 12(b)(1)**

25         A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a

26  challenge to the court's subject matter jurisdiction.  A court will dismiss a party's claim for lack of

27  _____

28  jurisdiction.  *Vaughan v. Wardhaugh*, Case No. 23-cv-02879-RFL, Docket No. 376.  That case is
    now on appeal.

United States District Court
Northern District of California

subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge asserts that subject-matter jurisdiction does not exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242. In contrast with a facial challenge, a factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### B. FRCP 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

### III.     REQUESTS FOR JUDICIAL NOTICE

Along with its motion to dismiss, Movement requests judicial notice of the docket and complaint filed in the *Wardhaugh* case and its appeal.  [Docket No. 57 (Movement RJN).]  Movement also requests judicial notice of the Deed of Trust, recorded on March 1, 2021 in the Official Records of the Alameda County Recorder's Office, and a letter from Movement to Plaintiffs dated May 3, 2022 regarding a stop payment request.  *Id.*

On July 29, 2025, fifteen days after the last reply was filed by Defendants, Plaintiffs filed an administrative motion for leave to file a request for judicial notice.  [Docket No. 66 (Plfs. RJN).]  Plaintiffs seek judicial notice of the docket report for this case, the docket report in the *Wardhaugh* case, the notice of voluntary dismissal of certain defendants in *Wardhaugh*, and Judge Lin's order dismissing the third amended complaint in *Wardhaugh*.  *Id.*

A district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion unless the motion is converted to a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.*  Under Federal Rule of Evidence 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  While a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, it may not take judicial notice of disputed facts stated in public records.  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.  If a court takes judicial notice of a document, it must identify the specific fact or facts it is noticing from the document.  *Id*.

1    The court takes judicial notice of the fact that the proceedings in *Wardaugh* occurred, as it

2    is a matter of public record not subject to reasonable dispute.  The court does not take notice of

3    any of the allegations or arguments in *Wardaugh* for their truth, because the case was dismissed

4    without reaching a finding of fact and the truth of the allegations is subject to dispute.

5    The court takes judicial notice of the Deed of Trust.  Movement RJN, Ex. 4 (Deed of

6    Trust).  Plaintiffs dispute the authenticity of the document, arguing it is actually "a private copy

7    refiled in another matter and includes no verifiable certification (see electronic header)."  [Docket

8    No. 61.]  The electronic header of the document simply indicates that it was originally filed in

9    *Wardaugh* on October 10, 2023.  The document includes a stamp indicating that it was

10   electronically recorded in the official records of Alameda County by Melissa Wilk, Clerk-

11   Recorder, on March 1, 2021 at 3:56 PM.  Deed of Trust 1.  Other than Plaintiffs' complaint about

12   the electronic header, they raise no reason to believe the document may have been altered or

13   falsified.  The Deed of Trust is a matter of public record not subject to reasonable dispute.

14   The court denies judicial notice of the letter Movement sent to Plaintiffs on May 3, 2022.

15   Movement RJN, Ex. 5.  Movement's argument that judicial notice of the letter is appropriate

16   under FRE 201(b)(2) lacks merit.  It is a private letter not in the public record, and it is subject to

17   reasonable dispute.

18   Plaintiffs' administrative motion for leave to file a request for judicial notice is denied as

19   moot.  As explained above, the court is already taking judicial notice of the entire *Wardaugh*

20   docket and proceedings.  Judicial notice of the docket and proceedings in this case is unnecessary

21   because they already constitute the record.

## IV.    DISCUSSION

### A.    Subject Matter Jurisdiction

24   Plaintiffs assert both diversity and federal question subject matter jurisdiction.  FAC ¶¶ 6-

25   7.  Compass argues there is no diversity jurisdiction because Compass is a California citizen.

26   [Docket No. 49 (Compass MTD) 11-12.]  Plaintiffs dispute this.

27   Compass brings a factual challenge to subject-matter jurisdiction.  As such, the court may

28   look beyond the complaint to matters of public record without converting this into a motion for

United States District Court
Northern District of California

United States District Court
Northern District of California

1   summary judgment.  *White*, 227 F.3d at 1242.

2        The FAC states that Compass is "a corporation organized and existing under the laws of

3   the State of Delaware and lawfully conducting business in the State of California and specifically

4   in the County of Alameda as a California-licensed real estate broker."  FAC ¶ 14.  In its motion to

5   dismiss, Compass attaches evidence about its business locations and argues it is a citizen of

6   California because it is "only licensed in the State of California . . . has several branch offices

7   located throughout California with its main office located at 891 Beach Street in San Francisco,

8   California . . . [and] Compass California II, Inc.'s real estate licensees are licensed in the State of

9   California and primarily transact business within the State of California."  Compass MTD 11;

10   [Docket No. 49-2 (Kathy Mehringer Decl., May 19, 2025) ¶¶ 3-6].

11        In opposition, Plaintiffs attach evidence that Compass has its principal place of business in

12   New York.  [Docket No. 51-1 (Amy A. Vaughan Decl., June 2, 2025) ¶ 4, Ex. 1.]  The California

13   Secretary of State filing for Compass from July 10, 2024 lists the principal address of Compass as

14   110 Fifth Avenue, 4th Floor, New York, NY 10011.  *Id.*  The officers and directors listed in the

15   filing are also all located at the same New York address.  *Id.*  No California address is listed.

16   Compass does not dispute the accuracy of the California Secretary of State filing; it simply argues

17   that the "nerve center" of the company is in California because it conducts all or substantially all

18   of its business in California.  [Docket No. 55 (Compass Reply) 3.]

19        Under the federal diversity statute, a corporation is "deemed to be a citizen of every State

20   and foreign state by which it has been incorporated and of the State or foreign state where it has its

21   principal place of business."  28 U.S.C. § 1332(c)(1).  The Supreme Court has interpreted

22   "principal place of business" to mean "the place where the corporation's high level officers direct,

23   control, and coordinate the corporation's activities," also known as the "nerve center."  *Hertz*

24   *Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  The Supreme Court explicitly rejected a citizenship

25   test based on where the business conducts a substantial amount of its activities.  *Id.* at 93-94.

26        Compass provides no legal support for its assertion that the "nerve center" is where a

27   company conducts most of its transactions as opposed to where the corporation's high-level

28

1    officers have listed their address.[3]  Compass also does not dispute that its officers and directors are

2    located in New York and control the business's activities from New York.  Compass is a citizen of

3    Delaware and New York.  The parties are completely diverse.

4          Compass does not dispute that Plaintiffs have met the amount-in-controversy requirement

5    for diversity jurisdiction.  When a complaint alleges on its face an amount in controversy

6    sufficient to meet the $75,000 jurisdictional threshold for diversity, such requirement is

7    presumptively satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually

8    recover that amount.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007);

9    28 U.S.C. § 1332(a).  Plaintiffs assert they have suffered "monetary losses exceeding $78,000,

10   including down payment, mortgage payments, property taxes, insurance premiums, and costs

11   related to relocation and repair."  FAC ¶ 460.  Plaintiffs also seek damages for emotional distress

12   and punitive damages.  This is sufficient to meet the amount-in-controversy requirement at the

13   pleadings stage.

14         The court finds that it has diversity jurisdiction over the complaint.  The court does not

15   reach the parties' arguments about federal question jurisdiction and supplemental jurisdiction

16   because they are moot.

17        **B.      Contract-Based Claims**

18         The FAC brings claims for rescission and tortious breach of implied covenant of good faith

19   and fair dealing.  These claims are viable only if a valid contract was formed.

20              **1.       Rescission**

21         Plaintiffs seek to rescind their agreement to enter into the Purchase Loan in February 2021.

22   Plaintiffs bring this claim against Movement and Fannie Mae (collectively "Mortgage

23   Defendants"), citing California Civil Code Section 1689(b).

24         "A prerequisite to any claim for rescission is a contract between the parties. . . . This is

25   because rescission requires each party to the contract to restore to the other everything of value

26   received under the contract."  *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 935 (2011) (citation

27   ──────────────

28   [3] In their reply, Compass cites *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  *Daimler* is
     inapposite; it addresses personal jurisdiction, not citizenship for purposes of diversity jurisdiction.

United States District Court
Northern District of California

omitted).  Therefore, to the extent Plaintiffs assert that no valid or enforceable contract was formed, Plaintiffs' rescission claim fails.  For example, Plaintiffs allege at various points that they received no valuable consideration or benefit of the bargain when they entered into a loan agreement with Mortgage Defendants.  *See, e.g.,* FAC ¶¶ 51-52, 87.  An enforceable contract must "be supported by a valid consideration."  *Herbert v. Lankershim*, 9 Cal. 2d 409, 477 (1937).  Plaintiffs cannot claim that their loan agreement should be rescinded while also asserting that the loan agreement was never supported by valid consideration.  Rescission is unavailable under these circumstances.

At the hearing, Plaintiffs argued they should be allowed to plead rescission in the alternative if the court finds that the loan agreement was validly formed.  This argument fails for additional reasons.  Rescission requires that Plaintiffs first restore to Mortgage Defendants "everything of value" that they received under the contract.  *See* Cal. Civil Code § 1691.  To the extent Plaintiffs plead they received valid consideration when they entered into the contract, Plaintiffs have not sufficiently pleaded that they restored the consideration to Mortgage Defendants.

Given Plaintiffs' self-represented status, and in light of the policy in favor of allowing amendment that must be "applied with extreme liberality," *Eminence Capital*, 316 F.3d at 1051, the court cannot say with certainty that amendment is futile.[4]  Therefore, Plaintiffs' rescission claims against Mortgage Defendants (and Plaintiffs' associated arguments regarding mistake, lack of consideration, fraudulent inducement, and public policy) are dismissed with leave to amend.

### 2.    Tortious Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs bring a claim for tortious breach of the implied covenant against all four Defendants.  Plaintiffs generally allege that each Defendant failed to disclose to Plaintiffs the issues with Unit 5410 in the course of their transactions with Plaintiffs, or, in the case of Fannie Mae, failed to take corrective action before foreclosing on the property.

"The prerequisite for any action for breach of the implied covenant of good faith and fair

---

[4] The court applies this lens throughout this order to give the self-represented Plaintiffs ample opportunity to state a claim even where there is considerable doubt about its viability.

United States District Court
Northern District of California

dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Green Valley Landowners Assn. v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015). "The implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care. Rather, '[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract.'" *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 206 (2012) (quoting *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004)) (emphasis in original). "Because the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, compensation for its breach has almost always been limited to contract rather than tort remedies. At present, [the California Supreme Court] recognizes only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies." *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999) (citations omitted, cleaned up).

Plaintiffs have only alleged one insurance policy with Old Republic. Therefore, tortious (as opposed to contractual) breach of the implied covenant can only be brought against Old Republic. As a matter of law, Plaintiffs cannot bring a tortious breach of the implied covenant claim against Movement, Fannie Mae, or Compass.

With respect to Old Republic, Plaintiffs allege that it "acted in bad faith by selling [Plaintiffs] multiple title insurance policies and home warranty products that they knew and should have known were effectively useless for the property as it actually existed." FAC ¶ 424. Plaintiffs appear to argue that Old Republic had a fiduciary duty to independently investigate the property's value as a residential condo before entering into a contract with Plaintiffs. *Id.* ¶ 425. Tortious breach of the implied covenant is "limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *See Ragland,* 209 Cal. App. 4th at 206. Plaintiffs do not explain how Old Republic had an obligation under the express terms of its contract with Plaintiffs to independently investigate the property before selling them title insurance policies and home warranty products.

Plaintiffs also allege that Old Republic refused to pay Plaintiffs under its title insurance policy until Plaintiffs first paid $5,000 "to resolve the marketability issues" with Unit 5410, which Plaintiffs allege they had no legal ability to do.  FAC ¶ 430.  The allegations do not make clear what the title insurance policy covered.  The allegations are also unclear about the purpose of the $5,000 payment and why Plaintiffs had no legal ability to pay it.  The FAC does not plead sufficient facts for the court to draw the reasonable inference that Old Republic refused to honor a title insurance policy in bad faith.  *See Iqbal*, 556 U.S. at 678.

Plaintiffs cannot bring a claim for tortious breach of implied covenant against Movement, Fannie Mae, and Compass as a matter of law; therefore, that claim is dismissed against those three Defendants without leave to amend.  Plaintiffs' claim for tortious breach of implied covenant against Old Republic is dismissed with leave to amend.

### C.     FCRA

Plaintiffs assert that Movement violated FCRA because it made nine reports of nonpayment on the Purchase Loan to credit reporting bureaus.  Movement reported the payment status as "missed."  FAC ¶¶ 247.  According to Plaintiffs, there was "no due payment capable of being 'missed'" because the debt was invalid and unenforceable.  *Id.* ¶ 248.  Plaintiffs allege that Movement violated FCRA because it provided known false information as well as disputed information for which Movement had not satisfied its legal obligations, including its duty to investigate.  *Id.* ¶ 250.  Plaintiffs also allege that between November 2022 and May 2023, Movement made or caused to be made "at least two unauthorized credit checks for the unlawful purpose of attempting to sell us another illegal loan product."  *Id.* ¶ 253.  Plaintiffs allege that Fannie Mae is liable under the FCRA because it did not take any action to correct Movement's credit reporting.  *Id.* ¶ 257.

"[T]he FCRA imposes some duties on the sources that provide credit information to CRAs,[5] called 'furnishers' in the statute."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).  Furnishers have a duty to "provide accurate information."  15 U.S.C. §

---

[5] CRA is an acronym for credit reporting agency.

1    1681s-2(a).  "Duties imposed on furnishers under subsection (a) are enforceable only by federal or

2    state agencies."  *Gorman*, 584 F.3d at 1154.  In addition, if the furnisher receives notice of dispute

3    from a CRA, the furnisher has a duty to investigate the dispute and report the results of the

4    investigation to the CRA.  § 1681s-2(b).  "[A] notice of a dispute received directly from the

5    consumer does not trigger furnishers' duties under subsection (b)."  *Gorman*, 584 F.3d at 1154.

6    The FCRA creates a private right of action for willful or negligent noncompliance with subsection

7    (b).  *Id.* (citing § 1681s-2(c)).

8        Movement moves to dismiss this claim because Plaintiffs failed to allege that the furnisher

9    received a notice of dispute from a CRA.  In opposition, Plaintiffs contend they notified

10   Movement directly about the dispute, and that this direct notice supports liability under the FCRA

11   because Movement "acted as both loan originator and servicer and was responsible for credit

12   reporting."  Movement Opp'n 15.  Without support, Plaintiffs claim "courts have recognized"

13   certain exceptions to the requirement that the furnisher receive notice of dispute from a CRA.  *Id.*

14   Plaintiffs do not cite any case for this proposition, and the court was unable to find one.  Indeed,

15   Plaintiffs' argument directly contradicts longstanding Ninth Circuit precedent.  *See Gorman*, 584

16   F.3d at 1154; *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)

17   ("Congress did provide a filtering mechanism in § 1681s–2(b) by making the disputatious

18   consumer notify a CRA and setting up the CRA to receive notice of the investigation by the

19   furnisher.").  Plaintiffs fail to plead liability under section 1681s-2(b) because they have not

20   alleged that Movement received a notice of dispute from a CRA.

21       The FCRA also provides that a person shall not use or obtain a consumer report for any

22   purpose unless the purpose is authorized under the statute.  *Nayab v. Cap. One Bank (USA), N.A.*,

23   942 F.3d 480, 488 (9th Cir. 2019) (citing 15 U.S.C. § 1681b(f)).  Plaintiffs allege that Movement

24   made or caused to be made "at least two unauthorized credit checks for the unlawful purpose of

25   attempting to sell us another illegal loan product."  FAC ¶ 253.  These allegations are conclusory;

26   they do not include facts supporting an inference that the referenced loan product was illegal, or

27   that the purpose of the credit checks was unlawful.  Plaintiffs appear to shift theories in their

28   opposition brief; they assert that the problems with Unit 5410 made Movement's use of Matthew

United States District Court
Northern District of California

16

1    Vaughan's credit report in connection with the February 2021 Purchase Loan an unauthorized use.

2    Movement Opp'n 16-17.  The court cannot consider this new theory because Plaintiffs failed to

3    plead it in the FAC.

4         With respect to Fannie Mae, Plaintiffs offer a convoluted argument that Movement is

5    actually a CRA and Fannie Mae is a furnisher sending credit information to Movement, so Fannie

6    Mae was required to investigate after Movement notified it of Plaintiffs' dispute.  Fannie Mae

7    Opp'n 8-9.  Plaintiffs appear to argue that because Movement "performed certain credit reporting

8    acts" and provided "monthly payment and account status reports to Fannie Mae," Movement

9    meets the legal definition of a CRA.  FAC ¶¶ 244-45.  Under the FCRA statute, a CRA is "any

10   person which . . . regularly engages in whole or in part in the practice of assembling or evaluating

11   consumer credit information or other information on consumers for the purpose of furnishing

12   consumer reports to third parties."  15 U.S.C. § 1681a(f).  Plaintiffs pleaded that Fannie Mae

13   purchased the beneficial interest in the Purchase Loan from Movement after it was funded, and

14   Movement continued servicing the loan thereafter.  FAC ¶¶ 59, 157.  The mere transfer of account

15   information from a loan servicer to the entity with the beneficial interest in the loan does not meet

16   the definition of a CRA.  As a matter of law, Plaintiffs cannot plead that Movement is a CRA.

17        Plaintiffs do not cite any other authority to support their position that Fannie Mae can be

18   liable under the FCRA for failing to correct Movement's credit reporting.  It is unclear if Plaintiffs

19   seek to raise some other theory of FCRA liability against Fannie Mae.

20        Because the court cannot say with certainty that amendment would be futile, Plaintiffs'

21   FCRA claims against Movement and Fannie Mae are dismissed with leave to amend.

22        **D.     Wrongful Foreclosure**

23        Plaintiffs bring a wrongful foreclosure claim against Mortgage Defendants, asserting that

24   Fannie Mae's nonjudicial foreclosure sale and purchase of Unit 5410 on June 15, 2023 was

25   unlawful because the Deed of Trust was invalid and unenforceable.

26        A wrongful foreclosure is an equitable action to set aside a foreclosure sale, or an action

27   for damages resulting from the sale, on the basis that the foreclosure was improper.  *Sciarratta v.*

28   *U.S. Bank Nat'l Assn*., 247 Cal. App. 4th 552, 561 (2016).  The elements of a wrongful foreclosure

United States District Court
Northern District of California

17

claim are: "(1) The trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Id.* at 561-62 (citations omitted). Under California law, "only the entity holding the beneficial interest under the deed of trust . . . may instruct the trustee to commence and complete a nonjudicial foreclosure. If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect, the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 935 (2016) (citations omitted).

Plaintiffs allege that Unit 5410 was created through a nonconforming or unlawful land division, and therefore "cannot confer valid title." FAC ¶ 46. Plaintiffs also allege that "[i]nstruments purporting to transfer such property, including grant deeds, are void as a matter of law." *Id.* ¶ 47. Because the Deed of Trust was void, Plaintiffs allege that Mortgage Defendants had no legal authority to pursue a trustee's sale. *Id.* ¶ 264. Therefore, they allege that Mortgage Defendants' foreclosure of Unit 5410 was wrongful under California Civil Code Section 2924. *Id.* ¶ 260. Plaintiffs also allege that they were excused from tendering any payment on the loan at any time because there was "no valid debt instrument or enforceable debt obligation." *Id.* ¶ 262.

Plaintiffs have not sufficiently pleaded a wrongful foreclosure claim against Mortgage Defendants. Their allegations are conclusory. Plaintiffs do not explain why an improper subdivision of Unit 5410 necessarily means that the Deed of Trust is absolutely void. For example, they generally cite the California Subdivision Map Act, but do not identify which part of the Act allegedly was violated, and do not explain why grant deeds purporting to transfer unlawfully subdivided property are void. FAC ¶¶ 45-52. Plaintiffs also do not explain why an improper subdivision excuses them from repaying their loan. The allegations state that Mortgage Defendants loaned Plaintiffs $535,500, and Plaintiffs paid that amount to the sellers of Unit 5410

United States District Court
Northern District of California

1    (who are not parties in this lawsuit).  FAC ¶¶ 26, 31.  Plaintiffs cite no authority for their argument

2    that, if the grant deed is void, Plaintiffs have no obligation to repay the $535,500 loan.

3    　　　　A required element of wrongful foreclosure is that the debtor "tendered the amount of the

4    secured indebtedness or was excused from tendering."  *Sciarratta,* 247 Cal. App. 4th at 562.

5    Plaintiffs cite *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997), which held that "tender may not

6    be required where it would be inequitable to do so."  Plaintiffs do not explain why it would be

7    inequitable for Plaintiffs to restore to Mortgage Defendants the $535,500 that was undisputedly

8    paid to them.  Plaintiffs cite *Dimock v. Emerald Props. LLC*, 81 Cal. App. 4th 868, 878 (2000) to

9    argue that when a deed of trust is void (rather than voidable), the debtor is not required to tender

10   any of the amounts due under the note before challenging a foreclosure sale.  *Dimock* is

11   distinguishable because it involved the substitution of a former trustee by a new trustee, and the

12   court held that in light of the substitution, a foreclosure sale of the property by the former trustee

13   was void.  *Id.* at 874-76.  The result in that case was quiet title in favor of the plaintiff, "subject to

14   such encumbrances as existed at the time of the foreclosure sale."  *Id.* at 878-79.  *Dimock* did not

15   hold that the plaintiff had no enforceable debt obligation.  The court simply set aside the

16   foreclosure sale as void because the former trustee had no power to convey the property.

17   　　　　Plaintiffs' allegations are difficult to follow, particularly because they do not actually seek

18   to set aside the foreclosure sale—they seek damages for the negative effect of the foreclosure sale

19   on their credit.  Nevertheless, the court cannot state with certainty that amendment would be futile.

20   Plaintiffs' wrongful foreclosure claim is dismissed with leave to amend.

21   　　　　**E.    Constructive Fraud**

22   　　　　Plaintiffs bring a claim for constructive fraud against Compass and Old Republic.

23   　　　　"Constructive fraud is a unique species of fraud applicable only to a fiduciary or

24   confidential relationship."  *Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000)

25   (citation omitted).  The elements of constructive fraud are: "(1) a fiduciary or confidential

26   relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and

27   (4) resulting damage."  *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d

28   1009, 1021 (N.D. Cal. 2007) (citation omitted).  Under California common law, a real estate agent

or broker has a fiduciary duty to their client.  *Field v. Century 21 Klowden-Forness Realty*, 63 Cal. App. 4th 18, 25 (1998), *as modified* (Apr. 17, 1998).  "[D]epending on the circumstances, a broker's fiduciary duty may be much broader than the duty to visually inspect and may include a duty to inspect public records or permits concerning title or use of the property."  *Id.* at 26.

> [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent.* Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud *even though there is no fraudulent intent.*

*Salahutdin v. Valley of California, Inc.,* 24 Cal. App. 4th 555, 562 (1994) (citation omitted, emphasis in original).

Claims based in fraud, such as constructive fraud, must be pled with particularity as to the time, place, and manner of each act of fraud pursuant to Fed. R. Civ. P. 9(b).  *See Lancaster Cmty. Hosp.,* 940 F.2d at 405.

### 1.    Compass

Plaintiffs allege that Jason Mitchell, a Compass employee, was Plaintiffs' real estate agent during their purchase of Unit 5410.  FAC ¶¶ 281-185.  Plaintiffs allege that Mitchell made various representations to Plaintiffs that turned out to be false.  Plaintiffs also allege that Mitchell failed to disclose a material fact.

First, Plaintiffs allege that they asked Mitchell why the December 13, 2020 listing for Unit 5410 appeared "stagnant."  FAC ¶ 288.  Mitchell responded that he consulted with another Compass agent and learned there had been a previous interested buyer who backed out.  *Id.* ¶ 289.  Plaintiffs assert there was a prior listing for Unit 5410 which had been cancelled on December 10, 2020.  *Id.* ¶ 290.  These allegations do not plead constructive fraud with particularity because Plaintiffs do not plead the time, place, and manner of Mitchell's statement or omission.  It is also unclear how Mitchell's statement or omission was false, or how Plaintiffs relied on or were injured by it.

United States District Court
Northern District of California

United States District Court
Northern District of California

Next, Plaintiffs allege that Mitchell made various representations about the condo's legal requirements.  For example, Mitchell said that Unit 5410 "could not have been sold by the developer as a new residential condo unless the property was properly subdivided into residential condo parcels," the condo "could not have been occupied or sold [] unless construction was complete and compliant with then-applicable building and development standards," and construction "had to meet minimum building standards for it to be occupied."  FAC ¶¶ 295-300.  Mitchell also assured Plaintiffs that they could "trust the outcomes of the qualified appraisal, as well as Movement Mortgage's review of the qualified appraisal, to know with reasonable certainty whether Unit 5410 had marketable value as a residential condo."  *Id.* ¶ 301.  Mitchell further assured Plaintiffs that the mortgage underwriting process would reveal if there was anything wrong with the condo project.  *Id.* ¶ 316.  Plaintiffs assert that these statements were false because Unit 5410 was not, in fact, properly subdivided or constructed, and thus had no marketable value as a residential condo.  Plaintiffs state that Mitchell had access to records and information that should have alerted him to the fact that Unit 5410 was not property subdivided or constructed.  They allege they would not have purchased the condo if they had known it was not properly subdivided or constructed.

These allegations do not plead constructive fraud with particularity because Plaintiffs do not plead the time, place, and manner of Mitchell's statements.  Moreover, they do not state a claim.

*Salahutdin* sets out the standard for when a real estate agent breaches the fiduciary duty to disclose material facts.  In *Salahutdin*, the plaintiffs told real estate agent Seigal that they wanted to buy a house that could be subdivided and left to their two children.  24 Cal. App. 4th at 559.  Seigal informed the plaintiffs that the property had to be larger than one acre in order to legally be subdivided.  *Id.*  A property went on sale and the lot size was listed as more than one acre.  *Id.*  Relying on the multiple listing sheet, Seigal told the plaintiffs that the property met their requirements of a house that could be subdivided.  *Id.* at 560.  During a visit to the property, Seigal visually confirmed that a fence demarcated a boundary line that was more than one acre.  *Id.*  However, it turned out that the multiple listing sheet was false, the fence was not the true

boundary line, and the property in fact was 0.998 acres and could not be subdivided. *Id.* The court held that Seigal had breached his fiduciary duty to the plaintiffs and committed constructive fraud. *Id.* at 561. The court stated: "While [Seigal] was not required to investigate the sellers' representations or the truth of the description contained in the multiple listing service sheet before showing the property to plaintiffs, Seigal was at least required to tell plaintiffs that he had not verified the information he was passing on to them; that he was simply relying upon the description provided by the sellers." *Id.* at 563. Seigal breached his duty because he made affirmative statements as to the size, boundaries, and subdividability of the property, knowing those facts to be material to plaintiffs, and failed to disclose that he had not confirmed their accuracy. *Id.*

This case is distinguishable from *Salahutdin*. As alleged, Mitchell did not make affirmative statements as to the legality and marketability of Unit 5410 as if he had independently confirmed the accuracy of his statements. Rather, Mitchell made clear that he was relying on others' representations of the condo's legality, such as his reliance on the qualified appraisal and the mortgage underwriting process. Under the standard set forth in *Salahutdin*, Mitchell was not required to do more. Plaintiffs' allegations do not state a constructive fraud claim.

Plaintiffs also allege that they asked Mitchell whether they should be concerned that the property developer, Vincent Hayes, was involved with the HOA for Trask Lofts. FAC ¶ 304. Mitchell represented that he had investigated the matter, and made factual assertions that Hayes was a paid owners association manager and that it was "perfectly normal" for the developer to still be involved managing the condo project. *Id.* ¶ 305-308. Plaintiffs allege that in fact, Hayes was "never a legitimate property manager for Trask Lofts," and it was not normal or proper for a developer to be involved in any operations of a condo project because it was a "major conflict of interest." *Id.* ¶¶ 309, 312, 318. These allegations are conclusory. Plaintiffs do not explain why Hayes was not a "legitimate" property manager, nor do they plead facts to support their assertion that it is not normal for a developer to be involved in managing the property. These allegations do not support a constructive fraud claim.

Plaintiffs' constructive fraud claim against Compass is dismissed with leave to amend.

1    Any amended constructive fraud claim must be pled with particularity as to the time, place, and

2    manner of each act of fraud pursuant to Fed. R. Civ. P. 9(b).  *See Lancaster Cmty. Hosp.,* 940 F.2d

3    at 405.

4                            **2.    Old Republic**

5         Plaintiffs assert that Old Republic agent Helen Benson-Stone breached her fiduciary duty

6    by issuing the homeowner's and lender's policies of title insurance for a residential condo and by

7    releasing the purchase funds to the sellers and recording the grant deed, even though Benson-

8    Stone knew or had reason to know Plaintiffs would not receive valid title to a residential condo

9    upon close of escrow.  FAC ¶ 409.

10        Unlike the agent in *Salahutdin*, Benson-Stone is not a real estate agent.  The fiduciary

11   duties laid out in *Salahutdin* therefore do not apply.  Old Republic cites *Siegel,* which holds that "a

12   title insurer who has not undertaken to perform as an abstractor owes no duty to disclose recorded

13   liens or other clouds on title."  *Siegel v. Fid. Nat. Title Ins. Co.*, 46 Cal. App. 4th 1181, 1189-90

14   (1996).  In opposition, Plaintiffs do not dispute that a title insurance policy is not a guarantee as to

15   the state of the property's title.  Old Republic Opp'n 5.  Plaintiffs assert that they are making a

16   different argument: they contend that the title insurance policy "was a guarantee of the insurability

17   of the title as well as the terms of the policy, which were premised on the existence of a lawfully

18   existing residential condominium."  *Id.*

19        Plaintiffs have not pleaded that Unit 5410 was uninsurable.  Indeed, Plaintiffs allege that

20   Old Republic offered to make a payment to Plaintiffs under their insurance policy after Plaintiffs

21   discovered the defects with Unit 5410.  FAC ¶ 430.  The allegations are conclusory and do not

22   support a reasonable inference that the title insurance policy sold by Old Republic was "effectively

23   useless."  *Id.* ¶ 424.  The allegations also do not meet the particularity requirements of Rule 9(b).

24   Furthermore, Plaintiffs do not provide support for their argument that Old Republic had a

25   fiduciary duty to affirmatively investigate and disclose the legal status of Unit 5410 to Plaintiffs

26   before selling them a title insurance policy.  Plaintiffs do not cite any authority for the proposition

27   that a title insurer has a fiduciary duty to independently confirm the legal status of the insured

28   property.

Because the court cannot state with certainty that amendment would be futile, Plaintiffs' constructive fraud claim against Old Republic is dismissed with leave to amend. Any amended constructive fraud claim must be pled with particularity as to the time, place, and manner of each act of fraud pursuant to Fed. R. Civ. P. 9(b). *See Lancaster Cmty. Hosp.,* 940 F.2d at 405.

### F.    Civil Conspiracy

Plaintiffs allege civil conspiracy against all Defendants.

"Civil conspiracy is not an independent tort. Instead, it is 'a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'" *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 211-12 (2011), *as modified* (Aug. 24, 2011) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-511 (1994). "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Id.* at 212.

Plaintiffs' civil conspiracy claims are dismissed with leave to amend. For the reasons explained above, Plaintiffs have not alleged a wrongful act. In addition, Plaintiffs have not pleaded facts to support a reasonable inference that Defendants agreed to a common plan to commit the wrongful act. Plaintiffs' conclusory and speculative allegations of a conspiracy fail to state a claim. *See Twombly*, 550 U.S. at 555.

### G.    UCL

Plaintiffs allege violations of the UCL against all Defendants for unlawful, unfair, and fraudulent business acts. For the reasons stated above, the FAC fails to allege that Defendants engaged in unlawful, unfair or fraudulent activity. Plaintiffs' UCL claims are dismissed with leave to amend.

## V.    DISCOVERY RECONSIDERATION

On August 14, 2025, after hearing argument, the court determined that limited discovery should proceed. Minute Order. The court ordered Defendants to produce the basic client-facing documents for the Purchase Loan transaction and Plaintiffs' purchase of Unit 5410. The court

1    also ordered Old Republic to produce the lender's title insurance policy it had provided to

2    Movement in the course of the Purchase Loan transaction.  The court ordered Plaintiffs to produce

3    their existing documents, including notes and records, upon which their claims are based.

4            On August 18, 2025, Plaintiffs filed an objection to the discovery order.  [Docket No. 73.]

5    On August 19, 2025, the court ordered that if Plaintiffs seek reconsideration of the discovery

6    order, they must comply with Civil Local Rule 7-9.  [Docket No. 74.]  Pursuant to Civil Local

7    Rule 7-9, on August 27, 2025, Plaintiffs filed a motion for leave to file a motion for

8    reconsideration of the court's discovery order.  Recon. Mot.

9            A motion for reconsideration may be made on one of three grounds: (1) a material

10   difference in fact or law exists from that which was presented to the court, which, in the exercise

11   of reasonable diligence, the party applying for reconsideration did not know at the time of the

12   order for which reconsideration is sought; (2) the emergence of new material facts or a change of

13   law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments

14   presented before such order.  Civ. L.R. 7-9(b)(1)-(3).  The moving party may not reargue any

15   written or oral argument previously asserted to the court.  Civ. L.R. 7-9(c).  Whether to grant leave

16   to file a motion for reconsideration under Rule 7-9 is committed to the court's sound discretion.

17   *See Montebueno Mktg., Inc. v. Del Monte Corp.—USA*, 570 F. App'x 675, 676 (9th Cir. 2014)

18   (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007)).

19           Plaintiffs argue that the court failed to consider material facts—specifically, the fact that

20   the parties previously agreed in their Joint Case Management Statement to defer discovery

21   pending resolution of the motions to dismiss.  This argument lacks merit.  At the hearing on these

22   motions, Plaintiffs themselves requested that limited discovery be allowed to go forward pending

23   resolution of the motions.  The court considered the parties' arguments and granted Plaintiffs'

24   request in part.

25           Plaintiffs also argue that the court erred by imposing an indefinite limitation on discovery,

26   because such a limitation is only warranted "when the Court is *convinced* the plaintiff will be

27   unable to state a claim, not merely where claim viability is questioned."  Recon. Mot. (citing

28   *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981); *B.R.S. Land Inv'rs v. United States*, 596

United States District Court
Northern District of California

F.2d 353, 356 (9th Cir. 1979)).  Plaintiffs argue that the *Wood* standard cannot be met until the court actually rules that Plaintiffs' claims are not viable.  This argument is moot, as the court now issues this order finding that the FAC fails to state a claim.  The court's order limiting discovery shall remain in place unless and until Plaintiffs state a claim that survives the pleading stage.  *See, e.g., B.R.S. Land Inv'rs,* 596 F.2d at 356 (affirming the district court's limitation on discovery after the district court dismissed the plaintiff's complaint with leave to amend).

Finally, Plaintiffs complain about the discovery order's "vagueness and imbalance." Recon. Mot. 4.  Plaintiffs raise no material facts that the court failed to consider.  The court crafted the discovery limitation based on the complaint, the parties' papers on the motion to dismiss, and the parties' arguments at the hearing.  The court explained at the hearing that it is limiting discovery from Defendants due to serious questions about the viability of Plaintiffs' claims.  The court explained that Defendants are entitled to discovery from Plaintiffs that would allow them to understand the basis for Plaintiffs' complaint.  Permitting asymmetric discovery is within the broad discretion of the court.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("[b]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant") (citation omitted).  Plaintiffs do not raise any evidence of actual and substantial prejudice.

To the extent Plaintiffs assert the order is vague, the court addressed this concern in its August 19, 2025 order.

Plaintiffs' motion for leave to file a motion for reconsideration is denied.

## VI.   CONCLUSION

The court has subject matter jurisdiction over the case and dismisses the FAC for failure to state a claim.

Plaintiffs' rescission claims against Movement and Fannie Mae are dismissed with leave to amend.

Plaintiffs' tortious breach of implied covenant claims against Movement, Fannie Mae, and Compass are dismissed without leave to amend.  The same claim against Old Republic is

dismissed with leave to amend.

Plaintiffs' FCRA claims against Movement and Fannie Mae are dismissed with leave to amend.

Plaintiffs' wrongful foreclosure claims against Movement and Fannie Mae are dismissed with leave to amend.

Plaintiffs' constructive fraud claims against Compass and Old Republic are dismissed with leave to amend.

Plaintiffs' civil conspiracy claims against all Defendants are denied with leave to amend.

Plaintiffs' UCL claims against all Defendants are denied with leave to amend.

Plaintiffs' motion for leave to file a motion for reconsideration of its discovery order is denied.

Plaintiffs' Second Amended Complaint is due on January 8, 2026. Plaintiffs must plead their best case, and are forewarned that a further pleading failure may result in dismissal of claims without leave to amend. An Initial Case Management Conference is set for March 4, 2026 at 1:30 p.m. The parties shall file a joint case management conference statement by February 25, 2026.

**IT IS SO ORDERED.**

Dated: December 18, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

27